**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL NO.: 20-cr-193-BAH** |
| **v.** | |
| **MARK ALAN FRYDAY aka
MARK ALEN FRYDAY** | |
| **Defendant.** | |

## STATEMENT OF THE OFFENSE

Pursuant to Federal Rule of Criminal Procedure 11, the United States, by and through its undersigned attorneys, and MARK A. FRYDAY ("**FRYDAY**"), with the concurrence of his attorney, Casey Arbenz, Esq, stipulate and agree that the following facts fairly and accurately describe **FRYDAY's** conduct in the offense to which he is pleading guilty. These facts do not constitute all of the facts known to the parties concerning the charged offense and related conduct. This statement is being submitted to demonstrate that sufficient facts exist to establish that **FRYDAY** committed the offense to which he is pleading guilty. **FRYDAY** knowingly, voluntarily, and truthfully admits to the facts set forth below.

### I.      Maximum Penalties

A violation of 18 U.S.C. § 201(b)(1) carries a maximum sentence of 15 years of imprisonment; a fine not to exceed the greater of that authorized in accordance with the provisions of 18 U.S.C. § 201(b)(1) or $250,000 pursuant to 18 U.S.C. § 3571(b)(3); a term of supervised release of not more than 3 years, pursuant to 18 U.S.C. § 3583(b)(2); and an obligation to pay any applicable interest or penalties on fines and restitution not timely made.

### II.      Elements of the Offense

The elements of the charged offense, a violation of 18 U.S.C. § 201(b)(1), are:

1

1) The defendant gave, offered, or promised something of value to Public Official 1;

2) The defendant acted corruptly, that is, with the intent to influence an official act by Public Official 1 or to induce Public Official 1 to do or to omit to do an act in violation of his lawful duty; and

3) Public Official 1 was a public official at the time.

## III.    Brief Statement of Facts

1.    Beginning in or around 2014, U.S. military forces were deployed to an airbase near Erbil, Iraq ("EAB"), in support of U.S. military operations against the Islamic State in Iraq and Syria, known as Operation Inherent Resolve ("OIR").

2.    Field Ordering Officers ("FOOs") were U.S. military personnel or civilian employees of the Department of Defense authorized to make local purchases of up to approximately $30,000 to meet mission-critical requirements for deployed U.S. military units. Funds expended by FOOs were important to sustaining U.S. military personnel deployed to EAB and the OIR mission. Official duties of FOOs included authorizing payment for only the reasonable cost of local purchases and not accepting money, gifts, or other things of value from vendors seeking to do business with the U.S. military.  FOOs were public officials as defined in Title 18, United States Code, Section 201.

3.    Government Contractors 1 and 2 were Erbil-based companies that competed for U.S. government contracts, including FOO contracts.

4.    Lara Jumaah Mohammed ("Mohammed"), a citizen of Iraq, owned and controlled Government Contractors 1 and 2.

5.    **FRYDAY**, a citizen of the United States, was the Chief Executive Officer of Government Contractor 1.

2

6.      **FRYDAY** and Mohammed were business partners who agreed, had an understanding, and worked together on preparing bids for U.S. government contracts on behalf of Government Contractors 1 and 2. As partners, **FRYDAY** and Mohammed stood to benefit financially from any contract awarded to Government Contractors 1 or 2.

7.      Public Official 1 was a FOO deployed to EAB from in or around November 2019 to in or around April 2020.

8.      On or about February 12, 2020, Public Official 1 solicited bids from three companies, including Government Contractors 1-2, for a FOO contract to supply furniture ("Contract 1") to Public Official 1's military unit at EAB.

9.      **FRYDAY** and Mohammed agreed, had an understanding, and worked together on the preparation of bids for Contract 1 on behalf of Government Contractors 1-2. Mohammed was primarily responsible for obtaining pricing for the furniture from local vendors. **FRYDAY** aided her by preparing the bid forms that were submitted to Public Official 1. **FRYDAY** was aware that the prices for goods that were included on the bid forms that he prepared were substantially higher than the real cost of the goods.

10.      On or about February 17, 2020, Mohammed submitted Government Contractor 1's bid for Contract 1 to Public Official 1, offering to supply the requested items for $28,075. **FRYDAY** authorized Mohammed to include his name in the signature line of the bid documents.

11.      On or about February 19, 2020, Mohammed submitted Government Contractor 2's bid for Contract 1, offering to supply the requested items for $28,075.

12.      A portion of Contract 1 was awarded to Government Contractor 2.

13.      On or about March 2, 2020, **FRYDAY** and Mohammed together delivered the items purchased in Contract 1. During the delivery, Mohammed told Public Official 1 that she

would have paid Public Official 1 in exchange for the award of Contract 1 to either Government Contractor 1 or 2. Mohammed also informed Public Official 1 that she would pay Public Official 1 approximately 20% of the value of any future contract that Public Official 1 awarded to Government Contractor 1 or 2. Although **FRYDAY** did not participate in this conversation, Mohammed later told him of her plan to pay Public Official 1 approximately 20% of any contract that Government Contractor 1 or 2 obtained.

14. On or about March 6, 2020, Public Official 1 solicited bids from three companies, including Government Contractors 1-2, for a FOO contract to supply approximately 22 truck towing straps and six five-piece power tool sets ("Contract 2") to Public Official 1's unit.

15. Once again, **FRYDAY** and Mohammed agreed, had an understanding, and worked together on the preparation of bids for Contract 2 on behalf of Government Contractors 1-2. Mohammed was primarily responsible for obtaining pricing for the requested goods from local vendors, while **FRYDAY** was responsible for preparing the bid forms. **FRYDAY** was aware that the prices for goods that were included on the bid forms that he prepared were substantially higher than the real cost of the goods, in order to benefit **FRYDAY**, Mohammed, and Government Contractors 1-2 financially. **FRYDAY** was aware of Mohammed's plan to pay approximately 20% of the value of Contract 2 to Public Official 1. **FRYDAY** admits that he knowingly participated in Mohammed's plan to bribe Public Official 1 by preparing the inflated bid forms.

16. On or about March 11, 2020, Mohammed submitted a bid on behalf of Government Contractor 2 to supply the requested equipment for Contract 2 for approximately $29,900.

17. On or about March 11, 2020, Mohammed submitted a bid on behalf of Government Contractor 1 to supply the requested equipment for Contract 2 for approximately $31,800. Once again, **FRYDAY** authorized Mohammed to include his name in the signature line of the bid

4

documents. **FRYDAY** also personally drafted the email to which the inflated bid documents were attached.

18.    On or about March 23, 2020, **FRYDAY** and Mohammed met with Public Official. Mohammed reiterated her offer to pay Public Official 1 approximately 20% of the value of any contract awarded to Government Contractor 1 or 2. Of her proposal, Mohammed stated words to the effect of "[E]veryone here, they are doing it like this way." Mohammed agreed that she would give Public Official 1 approximately $4,000 if he awarded Contract 2 to Government Contractor 2. Mohammed further agreed to pay Public Official 1 approximately $2,000 in U.S. currency as an upfront payment for the award of Contract 2. Although **FRYDAY** did not participate in this conversation, Mohammed later reiterated to him her plan to pay Public Official 1.

19.    On or about March 24, 2020, **FRYDAY** and Mohammed met with Public Official 1. **FRYDAY** knew that Mohammed was going to give approximately $2,000 to Public Official 1. At the meeting, outside **FRYDAY's** presence, Mohammed handed Public Official 1 approximately $2,000 in U.S. currency with the understanding that Public Official 1 would award Contract 2 to Government Contractor 2.

20.    **FRYDAY** admits that by aiding and abetting Mohammed, his conduct amounted to the knowing, intentional and voluntary participation in a scheme to bribe Public Official 1 to induce Public Official 1 to award contracts to Government Contractor 1 or 2, and that in doing so, he acted corruptly and with the intent to influence the official acts of Public Official 1. **FRYDAY** further admits that he would have benefitted from the scheme, had it been successful.

21.    The benefit to be received by **FRYDAY**, Mohammed, and Government Contractors 1-2 under the scheme was approximately $29,900 (the value of Contract 2).

22. Defendant was arrested and first brought to the District of Columbia on or about October 4, 2020.

Respectfully submitted,

DANIEL S. KAHN
Acting Chief, Fraud Section
Criminal Division
United States Department of Justice

By: *Michael P. McCarthy*

Michael P. McCarthy, D.C. Bar #1020231
Trial Attorney, Fraud Section
Criminal Division
United States Department of Justice
1400 New York Avenue, N.W.
Bond Building, Fourth Floor
Washington, D.C. 20530
(202) 305-3995
Michael.McCarthy2@usdoj.gov

*Channing Phillips / je*

CHANNING D. PHILLIPS
Acting United States Attorney for the
District of Columbia

/s/

Eric S. Nguyen
Assistant United States Attorney
Public Corruption and Civil Rights Section
U.S. Attorney's Office for the
District of Columbia

## DEFENDANT'S ACCEPTANCE

I have read the foregoing Statement of Offense, and I have discussed it fully with my attorney, Casey Arbenz. I fully understand this proffer and I acknowledge its truthfulness, agree to it, and accept it without reservation. I do this voluntarily and of my own free will, intending to be legally bound. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this proffer fully.

Date: 03/27/2021                      _Mark Fryday_
                                       Mark Fryday
                                       Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read every page constituting the government's statement of offense related to my client's guilty plea. I have reviewed the entire proffer with my client and have discussed it with him fully. I concur in my client's agreement with and acceptance of this proffer.

Date: 3/28/21
                                       Casey Arbenz
                                       Attorney for Defendant